UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRIAN VAUGHN,<br><br>            Plaintiffs,<br><br>   v.<br><br>CITY OF PUYALLUP, a noncharter code city; and ROBIN JAMES, individually and in his capacity as Chief of Police of the Puyallup Police Department,<br><br>            Defendants. | Case No. C07-5093RJB<br><br>ORDER |

This matter comes before the Court on Defendants' Motion for Summary Judgment Dismissal of Plaintiff's Remaining Claims. Dkt. 29. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file herein.

I. PROCEDURAL HISTORY

On February 7, 2007, Plaintiff Brian Vaughn filed a complaint in the Superior Court of the State of Washington for Pierce County. Dkt. 1. Plaintiff alleges that his right to due process right was violated by Defendant City of Puyallup and Defendant Robin James ("Defendants") during his disciplinary proceeding and termination from the Puyallup City Police Department. *Id.* On February 27, 2007, the case was removed to the United States District Court for the Western District of Washington at Tacoma (Dkt. 1) and assigned to United States District Judge Robert J. Bryan on May 16, 2007. Dkt. 8.

ORDER
Page - 1

On November 27, 2007, Defendants filed this motion for Summary Judgment. Dkt. 28. On December 17, 2007, Plaintiff filed a response brief. Dkt. 36. On December 21, 2007, Defendants filed a reply brief. Dkt. 42.

## II. FACTS

Plaintiff was hired by the Puyallup Police Department in May, 1999. Dkt. 36 at 2. On January 26, 2006, Plaintiff responded to a shoplifting in progress at an area Sears department store ("Sears Call"). *Id.* at 3. After arriving at the scene, Plaintiff claims that he "took the steps he believed in his discretion to be necessary to assess the situation and secure the scene." Dkt. 36 at 3. Plaintiff, however, failed to run a background check on the shoplifting suspect who was detained by the Sears Loss Prevention employees. *Id*; Dkt. 28 at 3. The shoplifting suspect was later found to have been a "violent offender" (Dkt. 36 at 3) and to have been carrying a pocket knife (Dkt. 28 at 3).

After his assessment of the situation, Plaintiff called his supervisor, Sergeant Brokaw, to ask permission to leave the scene. Dkt. 36 at 4. Although the reasons Plaintiff left the scene are disputed, he did leave the store without completing his duties and left the suspect with the two Sears loss prevention employees. Dkt. 36 at 3. Sergeant Scott Engle eventually completed the call when he arrived at the store, ran a background check on the suspect, took the knife and suspect into custody, transported the suspect to jail, completed a report for the incident, and then took statements from the Sears employees to determine if he should recommend an investigation of Plaintiff's actions. Dkt. 28 at 4-5.

On January 26, 2006, Sergeant Engle prepared a memorandum to his Commander, Bryan Jeter, stating that Plaintiff had been dishonest in his handling of the Sears Call. Dkt. 28 at 5; Dkt. 36. at 4. On January 30, 2006, Sergeant Brokaw also prepared a memorandum to Commander Jeter stating that he had been misled in allowing Plaintiff to leave the Sears Call early. *Id.* On February 13, 2006, Commander Jeter informed Plaintiff that he was conducting an internal investigation of the Sears Call. *Id.* That investigation included Plaintiff's response to Commander Jeter's written questions. *Id.* at 4-5.

On March 7, 2006, Plaintiff was informed in a memorandum from Deputy Chief Jim Collyer that, as a result of the investigation into the Sears Call, discipline was possibly warranted "up to an unpaid suspension from duty for a period of 20 days (240 hours)." *Id.* at 5. On March 17, 2006, Plaintiff

attended a *Loudermill* hearing with Chief Robin James and Deputy Chief Collyer. *Id.*; *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542-543 (1985) (a *Loudermill* hearing is not an investigative hearing; it is a voluntary, predisciplinary hearing held after the investigation is complete that serves as an opportunity for the target of the investigation to offer his side of the story). At that hearing, Plaintiff provided a written statement on his own behalf, but declined to answer questions regarding the Sears Call or the internal investigation. Dkt. 28 at 7; Dkt. 36 at 5-6. Chief James terminated the meeting and stated that he would notify Plaintiff of his decision. *Id*. at 6.

On March 23, 2006, Deputy Chief Collyer sent Plaintiff a memorandum stating that Chief James had reopened the internal investigation of the Sears Call. Dkt. 36 at 6. Chief James conducted the additional investigation. *Id.* On March 24, 2006, Deputy Chief Collyer sent Plaintiff a memorandum stating that the additional investigation had been completed. *Id.* That memorandum stated that discipline was possibly warranted up to a twenty-day suspension and informed Plaintiff of an opportunity to attend a second *Loudermill* hearing on March 29, 2006. *Id.* Plaintiff did not attend that hearing, but Plaintiff submitted a written response to Chief James claiming the additional investigation was biased and unfair. *Id.*

Meanwhile, from February 2006 to early May 2006, Plaintiff and other members of the Puyallup Police Department confidentially delivered, first to Puyallup City Manager Jim Bacon, and then to Mayor Mike Deal and the City Council, a series of letters outlining their concerns with Chief James' leadership of the department. *Id.* at 7. Plaintiff claims that the group's concerns included: "inadequate distribution of personnel, questionable policy-making, employee favoritism, unequal and unfair discipline and use of threats and retaliation." *Id.*

On May 16, 2006, City Manager Bacon distributed an email to all Puyallup Police Department employees informing them that he had conducted a series of meetings with some employees to discuss concerns about the direction and management of the police department. Dkt. 28 at 8. Mr. Bacon identified four broad areas of concern that had been reported: management and direction of the department, disciplinary and promotional decisions, jokes or remarks that made people feel uncomfortable, and morale. *Id*. Mr. Bacon also stated that specific complaints of inappropriate comments made by Chief James would be investigated. *Id.*

On May 18, 2006, the Puyallup Herald published an article titled, "Police Chief under Fire" and quoted Officer Pam Cool as stating that "[o]ur end result is to get rid of this chief." *Id.* at 9. The article reported that Officer Cool had drafted a letter dated May 12, 2006, to the Puyallup City Council on behalf of 20 employees, citing issues over leadership, behavior and department morale. *Id.*

Defendants claim that Sergeant Brokaw was concerned by the Puyallup Herald article. On May 18, 2006, Sergeant Brokaw submitted a public disclosure request for copies of the letter signed by the 20 officers regarding Chief James, and other related documents. Dkt. 28 at 9. After the City provided Sergeant Brokaw with those documents, he made copies of the documents and placed them in the employee mailboxes of all personnel at the Puyallup Police Department. *Id.* at 9; Dkt. 36 at 8. Plaintiff claims that due to this dissemination of documents, Chief James learned that Plaintiff was among the group of police department employees that had voiced concerns to City Manager Bacon and the Puyallup City Council. *Id.* at 8.

On June 8, 2006, Chief James initiated an independent review of Plaintiff's internal investigation regarding the Sears Call. *Id.* at 10. Chief James claims that he initiated the independent investigation because Plaintiff was alleging that Chief James' investigation of the Sears call was biased and unfair. Dkt. 28 at 9. Chief James signed a commission directed to Federal Way Deputy Chief Brian Wilson to allow him to review the investigation of Plaintiff, conduct any additional investigation necessary, determine the credibility of the witnesses, and make findings and recommendations regarding whether discipline was warranted. *Id.* at 10. Plaintiff claims that this independent review was hardly more than a "rubber-stamp" of the original internal investigation. Dkt. 36 at 10. There is, however, nothing in the record indicating any conversation or contact between Chief James and Deputy Chief Wilson regarding the independent investigation.

On July 11, 2006, Deputy Chief Wilson completed his investigation of Plaintiff and issued a report to the Puyallup City Attorney. Dkt. 28 at 12. Deputy Chief Wilson found that the allegations originally made by the Puyallup Police Department were sustained, and added an allegation that Plaintiff failed to truthfully answer questions from superiors during the internal investigation. *Id.* Deputy Chief Wilson recommended that Plaintiff be terminated because of the serious sustained allegations of misconduct and the effect Plaintiff's misleading and untruthful statements would have on his ability to serve as a police

1 officer. *Id*. at 12-13.

2 On July 20, 2006, Chief James notified Plaintiff of possible discipline up to and including termination, and provided the detailed reasons for this possible discipline. *Id.* Chief James provided Plaintiff with a copy of Deputy Chief Wilson's complete report, including transcribed statements of the Sears employees. *Id*. Chief James also invited Plaintiff to attend a third *Loudermill* hearing to present evidence and information on his own behalf. *Id*. Plaintiff responded with a written submission, but declined to attend the hearing. *Id.*

On August 18, 2006, Chief James issued his decision in a memorandum that was received by Plaintiff on August 23, 2006. *Id.* at 14. Chief James' decision sustained the allegations of misconduct and terminated Plaintiff. *Id*. On August 23, 2006, Chief James also distributed a detailed memorandum to all Puyallup Police Department employees explaining the results of the investigation against Plaintiff and the decision to terminate him. *Id*. Plaintiff claims that, in this memorandum, Chief James disparaged and undermined Plaintiff's credibility, his honor, and his dependability, and unequivocally stated Chief James' opinion that Plaintiff's conduct had made him absolutely and permanently unfit to serve as a Puyallup Police Officer. Dkt. 36 at 11. Plaintiff also claims that the memorandum served no legitimate purpose, was contrary to prior Puyallup Police Department practice, and made it impossible for Plaintiff to return to work. *Id.* at 12.

The parties dispute whether the memorandum explaining the circumstances of Plaintiff's termination was publically disseminated. Plaintiff claims that a copy of the memorandum was placed in the main security office during the 2006 Puyallup Fair, an event in which dozens of regional police departments share security duties. *Id*. Defendants claim that Lieutenant Brokaw (he was promoted from Sergeant in June, 2006) had a copy of the memo on his desk when he was on duty at the fair. Dkt. 42 at 6.

On September 1, 2006, Plaintiff appealed his termination to the Puyallup Civil Service Commission ("Commission"). Dkt. 36 at 12. The Commission conducted a hearing that lasted for four days in October of 2006. *Id*. On November 8, 2006, the five person Commission issued a 3-2 decision, with the majority concluding that Plaintiff had not been terminated for just cause. Dkt. 28 at 15. The Commission found that Plaintiff had committed serious misconduct and dereliction of duty, that he misled his Sergeant, that he made statements of fact when he did not know whether those facts were true, and that his testimony during

the hearing had not been credible. *Id*. The Commission further concluded that serious discipline was appropriate. *Id*. The Commission disciplined Plaintiff with 67 days of unpaid suspension, reduction in rank to the lowest rank of police officer with a corresponding reduction in pay, and probation for a year. *Id*.

The same day that the Commission issued its decision, Chief James sent a memorandum to all of the Puyallup Police Department employees stating that he would support the decision of the Commission. Dkt. 36 at 13. Plaintiff claims that the memorandum only served to further damage and diminish his reputation. *Id.*

After being reinstated by the Commission, Plaintiff did not return to work. Dkt. 36 at 13. Plaintiff remained on medical leave for extensor tendinitis in his arms. *Id.* On January 16, 2006, Plaintiff was cleared by the doctor to return to light duty work, but Plaintiff resigned. *Id.* at 14; Dkt. 28 at 16. Plaintiff claims that he "could not return to work at the [Puyallup Police Department] under the intolerable conditions created by the wrongful actions of Chief James and the City of Puyallup and was forced to tender his resignation." Dkt. 36 at 14.

### III. DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253

1  (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir.
2  1987).

3  The determination of the existence of a material fact is often a close question. The court must
4  consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a
5  preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*,
6  809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party
7  only when the facts specifically attested by that party contradict facts specifically attested by the moving
8  party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial,
9  in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809
10 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not
11 sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S.
12 871, 888-89 (1990).

**B.    Federal Due Process Claims**

Plaintiff claims that, in violation of procedural and substantive due process, he was deprived of property and liberty interests that are guaranteed by the Fourteenth Amendment of the U.S. Constitution. Complaint, ¶¶ 5.1-5.8. These claims are the basis for federal juridiction.

**1.    Procedural Due Process**

Plaintiff maintains that the distribution of a memorandum by Chief James on August 23, 2006, combined with Chief James' failure to issue a retraction or rescission, "made the entire disciplinary process absolutely meaningless." Dkt. 37 at 5.

The fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The court must balance the competing interests at stake: 1) the private interests in retaining employment, 2) the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and 3) the risk of an erroneous termination. *See id. at* 335 ("*Mathews* test"). Further, due process may require "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Loudermill*, 470 U.S. at 542-543 (1985). Moreover, the employee must have a *meaningful* opportunity to confront the evidence against him, "in particular that evidence with

which the decisionmaker is familiar." *Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 780 (9th Cir. 1982) (emphasis added).

Plaintiff maintains that summary judgment is inappropriate because "there are sufficient facts upon which a jury applying the *Mathews* test could find that the procedures used to terminate Vaughn deprived him of a meaningful opportunity to challenge his termination and clear his name." Dkt. 37 at 6-7. The Court, however, should apply the *Mathews* test to determine whether, based on the facts construed in the light most favorable to the Plaintiff, there is evidence in the record to show that Defendants violated Plaintiff's procedural due process rights. *See Loudermill*, 470 U.S. at 543-546.

Plaintiff concedes that he was provided opportunities to confront the evidence against him. Dkt. 37 at 4. Plaintiff, however, argues that those opportunities were not meaningful because of bias and retaliation by Chief James. *Id*. Defendants contend that "Plaintiff engage[d] in a diatribe regarding his belief that [Chief James'] August 23rd memo rendered the five *Loudermill* hearings he participated in prior to his termination, and the [Commission] hearing and proceedings after his termination, 'meaningless.'" Dkt. 43 at 4. Additionally, Defendants argue that "Plaintiff offers no legal authority to support his claim that the multiple opportunities for due process he received were 'meaningless.'" *Id.* As more fully explained below, Plaintiff does not advance a genuine issue of material fact as to whether he was not provided a meaningful opportunity to contest the evidence presented against him either before or after his termination.

First, Plaintiff was given multiple opportunities to confront the evidence against him before he was terminated. On March 17, 2006, Plaintiff attended a *Loudermill* hearing and was accompanied by a fellow co-worker and his union representative. Dkt. 36 at 5. Plaintiff declined to attend at least two other *Loudermill* hearings before his termination. *Id*. at 6, 10. On at least one occasion, Plaintiff did submit a written response. *Id*. at 6. Plaintiff has failed to show how Chief James' memorandum on August 23, 2006, or Chief James' failure to issue a rescision or retraction resulted in previous opportunities being "meaningless."

Second, Plaintiff argues that Chief James's memorandum "created an enormous risk of so seriously undermining [Plaintiff's] reputation with his fellow officers that reinstatement was certain to be meaningless." Dkt. 37 at 5. And, because reinstatement was meaningless, Plaintiff claims, a successful

appeal of his termination was meaningless. *Id.* Plaintiff fails to explain why a police chief should not be allowed to inform police department employees of mistakes that should *not* be made. Moreover, Plaintiff fails to explain exactly when a police chief should be allowed to disclose the circumstances surrounding a termination during the time period between the actual termination and the employee's final appeal to the Supreme Court, which could conceivably span a period of years. Arguably, the possibility of undermining Plaintiff's reputation raises claims of defamation and wrongful termination, but not a violation of due process.

Third, Plaintiff argues that "[t]he undisputed fact that a similar document has never been issued in the history of [the Puyallup Police Department] discipline underscores the unique and serious nature of Chief James' actions." Dkt. 37 at 5. Plaintiff has failed to show how an uncommon action is necessarily an illegitimate action. In fact, one can only hope that a serious dereliction of duty by a local police officer is an uncommon and isolated occurrence. And, additional disciplinary process is highly unlikely to result in a deprivation of due process.

Fourth, Plaintiff claims that "[h]ad Chief James publicly retracted, rescinded, or apologized for his August 23 Memorandum, perhaps the City could legitimately claim that the post-termination appeal process mitigated the risk to [Plaintiff] of 'erroneous deprivation' of his rights." Plaintiff has failed to show that procedural due process requires a public apology, retraction, or rescission. As Defendants maintain, "the evidence of the November 8, 2006, memorandum from Chief James reporting the results of the [Puyallup Civil Service Commission] hearing and decision speaks for itself."

Therefore, Plaintiff has failed to show that his disciplinary proceeding was meaningless or that there is a material issue of fact regarding the procedure of the disciplinary proceedings. Instead, the evidence shows that the disciplinary process worked as intended. Plaintiff was given multiple pretermination opportunities to confront the evidence presented against him. Once claims of bias arose, Chief James commissioned an independent investigation. The independent investigator recommended that Plaintiff be terminated because of Plaintiff's dereliction of duty and dishonesty. On appeal, a reviewing body of five individuals issued a split decision that Plaintiff be reinstated with severe punishment for his actions. The extent to which Plaintiff argues that his reputation was injured does not diminish Plaintiff's opportunities to defend himself, particularly with the additional procedural safeguard of an independent investigator, nor

does it diminish opportunities for a successful appeals. The Court should grant summary judgment to Defendants and should dismiss Plaintiff's claim for deprivation of procedural due process.

### 2.     Substantive Due Process

A plaintiff can make out a substantive due process claim if he is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis. *Sagana v. Tenorio*, 384 F.3d 731, 742-43 (9th Cir. 2004), *cert. denied*, 543 U.S. 1149, 125 S.Ct. 1313, 161 L.Ed.2d 110 (2005). The claim, however, is limited to "extreme cases, such as a 'government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure.'" *Engquist v. Oregon Dep't of Agriculture*, 478 F.3d 985, 996 (9th Cir. 2007) *(citing Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997)). Moreover, to establish such a claim "an employee must show that '(1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment.'" *Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998) (*quoting Matthews v. Harney County*, 819 F.2d 889, 891-2 (9th Cir. 1982)).

The Ninth Circuit has not addressed the issue of whether the public disclosure element is satisfied when the employer limits dissemination to its own internal departments and processes. *Cooper v. University of Washington*, 2007 U.S. Dist. LEXIS 82969, 23, (W.D. WA, November 8, 2007). The circuits are split on this issue. *See Olivieri,* 122 F.3d at 408 (listing cases). In *Cooper*, the court found that "the rule adopted in the First, Third, and Seventh Circuits – that plaintiff must show that defendant publicized to the community or potential employers the grounds for plaintiff's dismissal – is preferred." *Cooper*, at 24. This Court also finds that that rule is preferred for the reasons relied upon by Judge Robert S. Lasnik in *Cooper*. Thus, Plaintiff's claim for substantive due process rests on whether Chief James' August 23 memorandum was publicized outside the Puyallup Police Department by Defendants.

Plaintiff claims that "the August 23 Memorandum was distributed by the [*sic*] Chief James and the City to the entire [Puyallup Police Department] as well as to officers of numerous local and regional law enforcement agencies who were working at the 2006 Puyallup Fair." Plaintiff relies on the Declaration of Puyallup Police Officer Pam Cool to support this assertion. Dkt. 38, ¶¶13-18. While working at the

Puyallup Fair in 2006, Officer Cool stated that she saw a Puyallup Police Lieutenant with a copy of Chief James August 23 memorandum. *Id.* Based on this, Officer Cool claims that the memorandum was "widely distributed" because she was questioned by individuals not associated with the Puyallup Police Department regarding Plaintiff's termination. *Id.* Defendants maintain that "[t]his is unsubstantiated speculation and is insufficient evidence to oppose a summary judgment motion." Dkt. 43 at 4. Defendants are correct; Officer Cool's statements only invite speculation as to whether the Chief and the City disseminated the memorandum beyond Puyallup Police Department personnel and are conclusory at best.

Therefore, Plaintiff has failed to show that there is a genuine issue of material fact regarding the publication of his termination. The Court should grant summary judgment to Defendants on Plaintiff's claim for deprivation of substantive due process.

**C.   Federal Retaliation Claim**

In some cases, the First Amendment protects a public employee's right to petition and the right of public employees to speak out on public issues. *Rendish v. City of Tacoma*, 123 F.3d 1216, 1220 (9th Cir. 1997). The public employee's speech must involve a matter of public concern. *Id.* at 1219. It is unclear whether Plaintiff claims he was terminated in retaliation for voicing his disagreement with Chief James' leadership of the department. However, to the extent Plaintiff raises that claim, Plaintiff has failed to establish a valid claim for two reasons.

First, Plaintiff's speech did not relate to a matter of public concern. Plaintiff claims that the group's concerns included: "inadequate distribution of personnel, questionable policy-making, employee favoritism, unequal and unfair discipline and use of threats and retaliation." Dkt. 36 at 6. Comments criticizing internal personnel matters are not of public concern. *Voigt v. Savell*, 70 F.3d 1552, 1560 (9th Cir. 1995).

Second, once Chief James was informed of Plaintiff's comments, Chief James sought independent review of Plaintiff's disciplinary proceeding. The independent reviewer recommended termination and Chief James adopted that recommendation. Moreover, there is no evidence in the record that Chief James contacted or interfered with the independent review of the proceeding.

**D.   State Law Claims and Order to Show Cause**

Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction

ORDER
Page - 11

1  over state law claims if (1) the claims raise novel or complex issues of state law, (2) the state claims
2  substantially predominate over the claim which the district court has original jurisdiction, (3) the district
3  court has dismissed all claims over which it has original jurisdiction, (4) in exceptional circumstances, there
4  are other compelling reasons for declining jurisdiction. "While discretion to decline to exercise
5  supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in §
6  1367(c), it is informed by the values of economy, convenience, fairness, and comity." *Acri v. Varian
7  Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997)(*internal citations omitted*).

8  In this case, one of the four conditions in § 1367(c) is present. As explained above, all Plaintiff's
9  federal claims are dismissed by this order. Accordingly, this Court has "dismissed all claims over which it
10 has original jurisdiction," and so has discretion to decline to exercise supplemental jurisdiction over the
11 state law claims under § 1367(c)(3).

12 Although "it is generally within a district court's discretion either to retain jurisdiction to adjudicate
13 the pendent state claims or to remand them to state court," *Harrell v. 20th Ins. Co.,* 934 F.2d 203, 205
14 (9th Cir. 1991), in the interest of fairness, the parties should be given an opportunity to be heard on
15 whether the case should be remanded to state court. Parties should be ordered to show cause why the
16 remaining state law claims should not be remanded to Pierce County Superior Court. Parties' responses, if
17 any, are due January 17, 2008. Parties' briefs should not exceed three pages. Consideration of the parties'
18 responses to the Order to Show Cause should be noted for January 18, 2008. In the meantime, the
19 remainder of Defendants' Motion for Summary Judgment Dismissal of Plaintiff's Remaining Claims (Dkt.
20 29) and Defendants' Motion for Summary Judgment Dismissal of Plaintiff's Defamation Claim (Dkt. 28),
21 which are based entirely on state law, should be stricken, but will be considered by the Court if the Court
22 ultimately decides to exercise supplemental jurisdiction. Additionally, Plaintiff's Motion for Relief from
23 Deadline to File Discovery Related Motions (Dkt. 32) and Plaintiff's Motion for Extension of Time to
24 Complete Discovery and for Additional Relief and an Award of Attorneys' Fees (Dkt. 34) should be
25 stricken, but will be considered by the Court if the Court ultimately decides to exercise supplemental
26 jurisdiction.

27                                                    IV. ORDER

28 Therefore, it is hereby

**ORDERED** that:

- Defendants' Motion for Summary Judgment Dismissal of Plaintiff's Remaining Claims ( Dkt. 29) is **GRANTED in part** as explained above;
- The remainder of that motion (Dkt. 29) and Defendants' Motion for Summary Judgment Dismissal of Plaintiff's Defamation Claim (Dkt. 28) are **STRICKEN** but will be considered if the Court ultimately decides to exercise supplemental jurisdiction;
- Plaintiff's Motion for Relief from Deadline to File Discovery Related Motions (Dkt. 32) and Plaintiff's Motion for Extension of Time to Complete Discovery and for Additional Relief and an Award of Attorneys' Fees (Dkt. 34) are **STRICKEN** but will be considered if the Court ultimately decides to exercise supplemental jurisdiction; and,
- Parties are further **ORDERED TO SHOW CAUSE, IF ANY THEY HAVE, WHY** the Court should not decline to exercise supplemental jurisdiction and remand the matter to Pierce County Superior Court.  Parties' responses, if any, are due January 17, 2008. Parties responses shall not exceed three pages.  Consideration of the parties' responses to the Order to Show Cause is hereby **NOTED** for January 18, 2008;

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 8th day of January, 2008.

ROBERT J. BRYAN
United States District Judge